

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 30, 1948

Hon. L. A. Woods
State Superintendent
Department of Education
Austin, Texas

Attn.: Hon. T. M. Trimble
First Assistant

Opinion No. V-674

Re: Applicability of the
base pay requirements
of Sec. 2 of Article
III, H. B. 295, 50th
Legislature, to voca-
tional teachers.

Dear Sir:

We refer to your letter of recent date from which we quote in part:

"Section 2 of Article III of the Equalization Law reads, in part, as follows:

"'The base pay for Vocational Agriculture, Vocational Home Economics, and Trades and Industries Teachers shall be One Hundred and Twenty-four Dollars ($124.-00) per month for twelve (12) months in both accredited and unaccredited schools . . .'

"The State Department of Education has interpreted this to apply both to teachers who receive Federal subsidies, and teachers who do not receive Federal subsidies.

"Our interpretation of the word 'vocational' has been challenged and we are asking your opinion as to whether the word 'Vocational', as used in H. B. 295, enacted by the 50th Legislature, applies only to persons who are receiving Federal subsidies."

Article 2680, V. C. S., provides that besides the subjects prescribed by law to be taught in the public schools of Texas, such additional subjects as agriculture, manual training, domestic economy or other vo-

cational branches shall be included in the course of study in all high schools provided herein and that special attention shall be given to the teaching of such subjects.  Thus is indicated the expressed desire and intent of the Legislature of this State that vocational education be provided and be given special attention by the educational administrative agencies created by the Legislature.

In 1917, Congress passed an Act, commonly called the "Smith-Hughes Act", the purpose of which was to provide for the promotion of vocational education in cooperation with the States in the fields of agriculture, home economics, trades and industries.  Public Law No. 347, 64th Congress, approved Feb. 23, 1917.  This Act appropriates certain sums of money, upon conditions therein stated, for the purpose of cooperating with the States which accept the benefits of the Act in paying the salaries of teachers, supervisors, and directors of agricultural subjects and teachers of trade, home economics, and industrial subjects, and in paying expenses incurred in the training of teachers of such subjects.

The Legislature of Texas accepted the provisions of the Smith-Hughes Act and designated the State Board of Education as the State Board for Vocational Education.  Acts 1917, 35th Leg., 1st C.S., Chap. 131; Acts 1919, 36th Leg., R.S. Chap. 114; Acts 1923, 38th Leg., R.S., H. B. 239.  The George-Deen Act (Public Law No. 673, 74th Congress, approved June 8, 1936) authorized increased appropriation on a permanent basis to the States for vocational education both in the fields already aided and also in the field of distributive occupations.

Sections 4 and 5 of H. B. 239, Acts 1923, 38th Leg., R.S., Chap. 131, p. 271, wherein Texas accepted the provisions of the Smith-Hughes Act, provide:

"Sec. 4.  In order for any school to secure the benefits of the appropriation for the purposes specified in this Act, plans shall be submitted to the State Board of Vocational Education showing the kinds of vocational education for which it is proposed to use the said appropriations; the kind of school and equipment; courses of study; methods of instruction; qualifications of teachers; plans for the supervi-

sion and in the case of teacher-training institutions plans for the training of teachers as provided in the Act of Congress. It shall be the duty of the State Board of Vocational Education to thoroughly investigate such applications for aid under this Act and to require from each school so applying for aid under this Act, a certificate that such school meets substantially the requirements of the law before aid is granted. Said board shall endeavor so far as may be practical, to encourage the development of vocational education in the rural and small town schools.

"Sec. 5. The State Board of Vocational Education shall have authority to make studies and investigations relating to vocational education, to advise with the Federal board having in charge the direction of this work, to prescribe qualifications for teachers, directors and supervisors of the subjects for which provision is made in this Act, and to provide for the certification of such teachers, directors and supervisors, not to conflict with regulations of the Federal board."

This department has repeatedly held that the State Board of Vocational Education is charged with the duty and responsibility for the administration of the said Federal-subsidized vocational education program, the benefits of which have been accepted by the State. Opinions Nos. 0-5716, 0-4265, 0-5630, Opinion No. 2905 in Report and Opinions of Attorney General, Vol. 1932-1934, page 409.

Any school in Texas, therefore, which desires to secure the benefits of the Federal-subsidized vocational program may, under H. B. 239, make application to the State Board of Vocational Education and receive same upon establishment of its qualifications therefor.

Under Section 1 of said H. B. 239, the good faith of the State is pledged to make available through appropriations for the several purposes of the Smith-Hughes Act funds sufficient at least to equal the sums that may be allotted from time to time to this State from the appropriations made by virtue of said Act of

Congress, and to meet the conditions necessary to en-
title the State to the benefits of said Act of Congress.
The State has made such appropriations since its accep-
tance of said Federal-subsidized vocational program.
Acts 1947, 50th Leg., H. B. 542; Acts 1945, 49th Leg.,
S. B. 120; Acts 1943, 48th Leg., H. B. 219; Acts 1941,
47th Leg., H. B. 233; Acts 1939, 46th Leg., H. B. 926;
Acts 1937, 45th Leg., S. B. 185; Acts 1935, 44th Leg.,
H. B. 327; Acts 1933, 43rd Leg., H. B. 167, page 470;
Acts 1931, 42nd Leg., S. B. 259, page 697; Acts 1929,
41st Leg., 3rd C.S., H. B. 3, page 419; Acts 1927, 40th
Leg., 1st C.S., H. B. 2, page 279; Acts 1925, 39th Leg.,
S. B. 183, page 549; Acts 1923, 38th Leg., 3rd C.S., H.
B. 85, page 248.

The State's most recent appropriation in sup-
port of the Federal-subsidized vocational program is
found in H. B. 542, Acts 1947, 50th Legislature. Sec-
tions 2 and 3 of H. B. 542, provide:

"Sec. 2. The funds appropriated in
this Act shall be expended in accordance
with all Federal laws and regulations gov-
erning vocational education, providing
that in schools where equalization funds
are received, vocational agriculture, home
economics, trades and industries and dis-
tributive education shall comply with such
regulations as set forth in the Equaliza-
tion Bill.

"Sec. 3. Provided that vocational
agriculture, home economics, trades and
industries and distributive education
teachers may be paid for twelve (12)
months where the superintendent of the
school in which they are employed has
certified to the State Board for Voca-
tional Education that such teacher is ac-
tually engaged in teaching this work twelve
(12) months."

And Section 7 of said Act, the emergency clause, provides:

"The fact that many schools in this
State are desirous of having the ser-
vices of vocational teachers mentioned
in this Act, and the further fact that
if the schools receive such services it

> is absolutely necessary that this appro-
> priation be passed, create an emergency
> .  .  .

It is clear that H. B. 239, H. B. 542, or the
other prior State appropriation Acts in support of the
Federal vocational program do not require the Texas Pub-
lic Schools to accept the benefits of the Federal voca-
tional program.  H. B. 542 shows the appropriation is
made for those schools in this State which are desireus
of having the services of vocational teachers mentioned
in the Act and for those schools which need the sub-
sidized aid in order to have a vocational program.

There is no statute of which we are apprised
which would forbid or prohibit a school from providing
its own vocational educational program and financing
same out of its own school funds and/or rural aid funds.
Article 2680, hereinabove quoted, authorizes such a pro-
gram.  We find nothing in H. B. 239, wherein the State
accepted the Federal subsidy, which would show that the
State forfeited its rights to foster vocational educa-
tion in Texas along with and in addition to the Federal-
State cooperative plan of the Smith-Hughes Act.

Furthermore, the State in every rural aid Act
since the acceptance of the Smith-Hughes plan in 1923,
separate and apart from its appropriations to the Fed-
eral program, has made specific rural aid provisions to
assist rural aid schools in the development of a voca-
tional educational program, and in none of these provi-
sions can there be found any expression or intimation
on the part of the Legislature, that such vocational
rural aid assistance should go only to those schools
conducting a vocational program under the Federal sub-
sidized plan.  Acts 1923, 38th Leg., 3rd C.S., H. B. 61,
Sec. 6; Acts 1925, 39th Leg., S. B. 408, Sec. 7 and Sec.
14; Acts 1927, 40th Leg., 1st C.S., S. B. 7, Sec. 7;
Acts 1929, 41st Leg., 2nd C.S., H. B. 1, Sec. 7; Acts
1931, 42nd Leg., S. B. 263, Sec. 9; Acts 1933, 43rd Leg.,
H. B. 256, Sec. 13; Acts 1935, 44th Leg., H. B. 327, Sec.
13; Acts 1937, 45th Leg., S. B. 185, Secs. 13 and 20, pp.
1264 and 1269; Acts 1939, 46th Leg., H. B. 933, Sec. 7;
Acts 1941, 47th Leg., H. B. 284, Article III, Sec. 2;
Acts 1943, 48th Leg., H. B. 176, Article 3, Sec. 2; Acts
1945, 49th Leg., S. B. 167, Art. I, Sec. 1, 4th Par.,
Art. III, Sec. 2, 1st and 5th Pars.

Under Sections 2 and 3 of H. B. 542 (herein-

Hon. L. A. Woods, page 6  (V-674)


above quoted) in those schools accepting equalization funds under H. B. 295, 50th Leg., and accepting also the benefits of the Federal-subsidized vocational program, it is required that vocational agriculture, home economics, trade and industries education shall comply with such regulations as are set forth in H. B. 295, 50th Leg.

The fourth paragraph of Section 1 of Article I, H. B. 295, provides:

"No such district will be eligible for any type of aid except tuition aid, under the provisions of this Act, which pays any salary above those specified in this Act from any state, local, or Federal funds whatsoever, except Federal funds used to supplement salaries of Vocational Agriculture, Home Economics and Trade and Industries teachers, and funds from the Federal Lanham Act."

In the first paragraph of Section 2 of Article III, H. B. 295, we find:

". . . The base pay for Vocational Agriculture, Vocational Home Economics and Trades and Industries, teachers shall be One Hundred and Twenty-four Dollars ($124) per month for twelve (12) months in both accredited and unaccredited schools." (Emphasis ours)

In the last paragraph of Section 2 of Article III, H. B. 295, we read:

"The annual salary of . . . Vocational Agriculture teachers, Vocational Home Economics teachers and Trades and Industries teachers may be the monthly salary as determined by schedule stated herein multiplied by twelve (12)."

A careful reading of the pertinent provisions in all the above designated Rural Aid Acts, including H. B. 295, 50th Leg., wherever have been used therein the words: "Vocational", "Vocational subjects", "Vocational teacher", "Agricultural teachers", "Vocational Agriculture teachers", "Home Economics teachers", "Vocational Home Economics teachers", will reveal that such

words have been employed in their general, all-inclusive sense to mean and include all vocational teachers and programs, whether the teachers or programs are supported by Federal funds or not. The Legislature has never expressly nor intentionally, so far as we can ascertain, provided that the rural aid provision applicable to vocational programs and/or vocational teacher-salaries should be construed for the assistance only of those schools and teachers who are operating under and accepting the benefits of the Federal-subsidized vocational program.

Furthermore, under H. B. 542, 50th Legislature, vocational agricultural teachers, vocational home economics teachers, and trades and industries teachers in State-aid districts, whose salaries are subsidized under the Federal program, are expressly made subject to the salary-schedule provisions of the State-aid law, just as are all other vocational teachers in Texas who are employed by a State-aid school district. Article 2889, V. C. S.

Further, we are advised that these schools desiring to offer vocational courses but not desiring to apply for the benefits under the Federal subsidized program are advised by the Department of Education to employ only such vocational teachers as have been certified by the State Board of Vocational Education as meeting the standards and qualifications required of teachers functioning under the Federal subsidized vocational program.

Department of Education Bulletin No. 476, 1946-47, pages 99 to 105 inclusive, wherein are published departmental rules and regulations governing accreditation of the public free schools of Texas, reveals that vocational programs offered in said schools to be recognized for accreditation or affiliation purposes should be organized in accordance with requirements of the State plans for vocational education and merit the approval of the State Board for Vocational Education.

These rules evidence a cooperative intent on the part of the Department of Education to require a vocational educational program in Texas which meets the test of the State Plan approved by the State Board and the Federal Government.

It is reasonable to assume that the Legisla-

ture has full knowledge of these related facts, and that if it had intended that the vocational teacher salary-schedule provisions of the State-aid law (H. B. 295), should be applicable only to vocational teachers who receive Federal subsidies, it would have expressed such intention in clear, unmistakable language. In the light of the laws cited herein, we can find no such legislative intent in H. B. 295, 50th Legislature.

## SUMMARY

The word "Vocational" as used in Section 2 of Article III, H. B. 295, 50th Legislature, is not limited to those vocational teachers who are receiving Federal subsidy funds, but applies also to teachers therein named who are paid wholly from State and local funds.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:mw

APPROVED:

*Price Daniel*

ATTORNEY GENERAL